Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence, modifies and affirms the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. Plaintiff and defendants are subject to the Workers Compensation Act.
3. Plaintiff was an employee of defendant-employer on 6 September 1997, the date of a specific traumatic incident to her lower back.
4. Constitution State Services is the servicing agent for defendant-employer.
5. Medical records from Guilford Neurosurgical Associates, P.A., marked as exhibit 1 were received into evidence.
6. Medical records from the Kernodle Clinic marked as exhibit 2 were received into evidence.
7. Medical records from the Kernodle Clinic marked as exhibit 3 were received into evidence.
8. Medical records from Alamance Regional Hospital marked as exhibit 4 were received into evidence.
9. Medical records from Alamance Regional Hospital marked as exhibit 5A were received into evidence.
10. Medical records from Alamance Regional Hospital marked as exhibit 5B were received into evidence.
11. Medical records from Dr. Kritzer were marked as exhibit 6 and received into evidence.
12. Wage records marked as exhibit 7 were received into evidence.
13. Subsequent to the hearing before the Deputy Commissioner, a set of Industrial Commission forms marked as stipulated exhibit 8 was received into evidence.
14. After the hearing before the Deputy Commissioner the following items were submitted and received into evidence:
 a) a redacted copy of plaintiffs journal for the time period from 13 August 1997 through 5 October 1997 was marked as stipulated exhibit 9;
 b) a redacted copy of plaintiffs journal for the time period beginning 6 November 1997 was marked as stipulated exhibit 10; and
 c) a videotape of the deposition of Nurse Smith was marked as stipulated exhibit 11.
15. After the hearing before the Deputy Commissioner, the parties stipulated that plaintiffs compensation rate was $449.49.
 *********** ADDITIONAL EXHIBITS
1. Plaintiffs letter addressed to Executive Secretary Tracy Weaver, dated 29 October 1997, was marked as plaintiffs exhibit 1 and received into evidence.
2. A death certificate for C. W. Wade Hensley was marked as plaintiffs exhibit 2 and received into evidence.
3. Medical records from Dr. Crisp were marked as plaintiffs exhibit 3 and received into evidence.
4. A Social Security notice of award was marked as plaintiffs exhibit 4 and received into evidence.
5. A medical note from Dr. Roy was marked as plaintiffs exhibit 5 and received into evidence.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On or about 6 September 1997, plaintiff sustained a compensable injury to her back during the course and scope of her employment with defendant-employer.
2. Plaintiff first sought medical treatment for her compensable back injury at Urgent Care. X-rays taken at that time revealed a moderate disc narrowing at the L4, L5, and L5-S1 levels as well as spondylosis. Plaintiff was prescribed pain medications.
3. On 9 September 1997, plaintiff began a course of treatment at the Kernodle Clinic under the direction of Physicians Assistant Lynda Arnold and Douglas W. Peed, M.D. Ms.Arnold suspected spondylosis and directed plaintiff to take pain medications. Ms. Arnold, with Dr. Peeds approval, directed plaintiff to undergo physical therapy and released plaintiff to return to light duty work. Dr. Peed had initially approved plaintiff to participate in light duty work for therapeutic reasons. At that time, Dr. Peed did not know that plaintiff had sustained a herniated disc. Plaintiff initially did not participate in physical therapy or light duty work but instead remained in bed. After being admonished by Dr. Peed, plaintiff attempted physical therapy.
4. Plaintiff experienced an increase in pain in her back after undergoing ultrasound therapy as directed by Dr. Peed. On 1 October 1997, plaintiff reported these problems with physical therapy as well as problems with numbness in her left leg down to her toes to Ms.Arnold. Despite plaintiffs report that she was experiencing these increased problems, Ms.Arnold directed plaintiff to continue therapy. Ms. Arnold did refer plaintiff to an on staff orthopedist, James P. Hooten, M.D.
5. From 9 September 1997 to 4 October 1997, plaintiff attempted to do light duty work as provided by defendant-employer.
6. On 7 October 1997, plaintiff was examined by Dr. Hooten, who conducted a flip test that revealed that plaintiff was experiencing irritation to the lumbar nerve roots that extended from plaintiffs lower back and down into her legs. Dr. Hooten reviewed an MRI that revealed that plaintiff had a protruded disc. Dr. Hooten observed that plaintiff limped as a result of the back pain that she was experiencing. Despite these observations, Dr. Hooten did not restrict plaintiff from returning to light duty work from 7 October 1997 to 14 April 1998. Dr. Hooten referred plaintiff to undergo treatment with Gregory H. Crisp, M.D.
7. During the time period beginning 6 September 1997 to 3 November 1997, plaintiffs back pain became so severe that it caused her to experience incontinence.
8. The Kernodle Clinic has a policy against giving "out of work notes in workers compensation cases.
9. On 24 October 1997, defendant-employer offered plaintiff modified duty work processing paperwork at the phase 1 level. This type of work is not offered as a job in the competitive marketplace. Plaintiff did not accept this offer of rehabilitative employment because of the level of pain that she was experiencing.
10. On 3 November 1997, plaintiff began a course of treatment for her lower back pain under pain management specialist Dr. Crisp. At the time that Dr. Crisp began treating plaintiff, he was of the opinion that plaintiff was unable to perform light duty work, but he was unwilling to write plaintiff an "out of work slip. Dr. Crisp took the position that it was Dr. Hootens responsibility to handle "out of work notes. During the course of her treatment with Dr. Crisp, plaintiff underwent lumbar epidural injections, lumbar facet injections, myoneural block injections, and sacroiliac injections. Plaintiffs condition did not significantly improve.
11. On 3 November 1997, plaintiff sought a second opinion from Mark W. Roy, M.D., with regard to the course of treatment recommended by Dr. Crisp. Dr. Roy was in agreement that the use of steroid injections was a reasonable plan of action as recommended by Dr. Crisp. Dr. Roy was of the opinion that plaintiff should not have been performing light duty work at that time and restricted plaintiff from returning to work up until her next scheduled visit with him on 3 December 1997. Defendant-carrier would not authorize treatment by Dr. Roy and would not initiate payment of total disability compensation based upon Dr. Roys opinion.
12. After two years of conservative treatment for a herniated disc, defendant-carrier authorized Dr. Kritzer to perform a micro-diskectomy on plaintiffs lower back.
13. At the time that plaintiff was offered modified light duty work on 24 October 1997, plaintiff was not physically able to return to do any type of work because of her compensable herniated disc.
14. Defendant-carrier treated this claim as a "medical only claim. Defendant-carrier did not file a Form 60 Employers Admission of Employees Right to Compensation in this case until Dr. Kritzer took plaintiff out of work on 4 March 1999. Prior to that time, defendant-carrier did not file a Form 21 Agreement for Compensation for Disability, a Form 61 Denial of Workers Compensation Claim, or a Form 63 Notice to Employee of Payment of Compensation Without Prejudice to Later Deny the Claim.
15. As a result of the 6 September 1997 compensable injury by accident, plaintiff was unable to earn any wages for the time period beginning 4 October 1997 and continuing until the hearing before the Deputy Commissioner.
16. The aquatic treatment that was recommended by Dr. Crisp was reasonably necessary to lessen plaintiffs period of disability.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff is entitled to receive total disability compensation in the amount of $449.49 per week for the time period beginning 4 October 1997 and continuing until further order of the Commission. G.S. 97-29.
2. Plaintiff is entitled to have defendants pay for all reasonably necessary medical treatment arising from the 6 September 1997 compensable injury by accident to the extent that such treatment tends to effect a cure, provide relief, or lessen plaintiffs period of disability.
G.S. 97-2(19), G.S. 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff total disability compensation in the amount of $449.49 per week for the time period beginning 4 October 1997 and continuing until further order of the Commission. The accrued amount shall be paid to plaintiff in a lump sum, subject to the attorneys fees approved in this Award.
2. Defendants shall pay plaintiff for all reasonably necessary medical treatment arising from the 6 September 1997 compensable injury by accident to the extent that such treatment tends to effect a cure, provide relief, or lessen plaintiffs period of disability, including the aquatic treatment prescribed by Dr. Crisp.
3. Dr. Roy is HEREBY APPROVED as plaintiffs treating physician.
4. A reasonable attorneys fee in the amount of twenty-five percent of the compensation approved and awarded for plaintiff is approved for plaintiffs counsel. The attorneys fee shall be deducted from the compensation due plaintiff and shall be paid directly to plaintiffs counsel. Thereafter, plaintiffs counsel shall receive every fourth compensation check.
5. Defendants shall pay expert witness fees in the amounts of $235.00 for Dr. Kritzer, $235.00 for Dr. Roy, and $155.00 for Dr. Peed.
6. Defendants shall pay the costs.
 ORDER ON PLAINTIFFS MOTION
Plaintiff filed a Motion for Payment of Penalties and Attorney Fees, contending that she is entitled to penalties and attorneys fees for defendants failure to adjust 9 weeks of compensation to reflect the stipulated weekly rate, failure to pay attorneys fees as ordered by the Commission, and failure to reimburse plaintiff for mileage. This Motion is DENIED WITHOUT PREJUDICE to refile the motion in the event defendants fail to comply with this Order. It is hereby ORDERED that, irrespective of an appeal by either party to the North Carolina Court of Appeals, defendants shall immediately pay to plaintiff (1) any underpayment in total disability benefits pursuant to the 28 April 2000 Form 60 Admission, to the extent that payments were made at the rate indicated on the Form 60 rather than at the stipulated rate of $449.49, and (2) all itemized charges for travel submitted by plaintiff. Further, defendants SHALL forthwith pay all payments of 25% attorneys fees directly to plaintiffs counsel in accordance with Deputy Commissioner Bergers 30 June 1999 Order and this Opinion and Award. To the extent that defendants fail to make payments in a timely manner, defendants SHALL be subject to a 10% penalty. G.S. 97-18 (g); 97-86.1.
S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_______________ LAURA K. MAVRETIC COMMISSIONER